ARTHUR COLTON CO. v. McKESSON & ROBBINS, Inc.

No. 2053.

District Court, D. Connecticut.
Sept. 10, 1931.

Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich. (Charles B. Belknap, of Detroit, Mich., of counsel), and T. Clay Lindsey, of Hartford, Conn., for plaintiff.

Augustus B. Stoughton, of Philadelphia, Pa., and Marsh, Stoddard & Day, of Bridgeport, Conn., for defendant.

HINCKS, District Judge.

This is a suit in equity for infringement of letters patent No. 1,576,480, issued on the application of one Kath on March 9, 1926, covering a clip-attaching machine designed to shear strip metal as fed into the machine into clip-blanks, to fold these blanks into clips, and to seat and clamp these clips on the closed ends of filled tubes, such as are commonly used for tooth paste, etc. The defenses are invalidity and noninfringement.

It appears from the evidence that the plaintiff's machine follows the specifications of this patent in all respects material to this controversy. It feeds strip metal into the machine; then shears from the incoming metal a small metal blank, flat or substantially so; this blank is received in a slotted, recessed carrying chamber wherein the clip is carried to position under a pair of open jaws which then drop upon the carrying chamber. This chamber is seated on springs and is depressed by the downward action of the jaws so that through a longitudinal slot in the chamber a straight metal folding-blade emerges, forcing the blank between the superimposed jaws, thereby folding the blank into an inverted "V" in shape. This operation therefore serves to form the blank into a clip. The jaws then rise, retaining between their faces the folded clip, held by the friction resulting from its own resiliency, and carry the clip to position over a closed tube, upon which the clip is clamped by the very jaws in which it was formed and transferred as just described.

The defendant's machine which is claimed to infringe the patent, concededly is one which accomplishes the same result as the plaintiff's machine. It too feeds strip metal into the machine. It then shears from the incoming strip a small piece of metal with a shear which is faced upon a die. In position beneath the die is a straight folder-blade of metal, rigid against downward pressure. The operation of the machine is such that the downward thrust of the shear, faced upon the die as aforesaid, after severing the metal, continues to such an extent that the severed metal is simultaneously forced into the die by the folder-blade, and thereby folded into an inverted "V" in shape. Thus by a single downward stroke of the shear, the metal is severed and the severed portion folded into V-shape in the die. The die then rises, ejecting the formed clip by a spring, leaving the folded clip, held by gravity only, in position astride the folder-blade. A pair of jaws then moves into position above the clip and the folder-blade moves upward, forcing the clip, already folded into V-shape, into the jaws, which then carry the clip, held therein only by the friction resulting from its own resiliency, into position over a tube upon which it is clamped by the very jaws in which it was transferred.

I find from the evidence that in the defendant's machine it is the downward stroke of the shear and die which folds the clip into V-shape. When in the die, in this forming process, the V-shaped clip is necessarily under compression. When ejected from the die, this compression is necessarily lost, though of course the inherent resiliency of the clip remains. Thereafter, when the V-shaped clip is thrust between the jaws, compression again takes place. Obviously this must be so or the clip would lack the friction necessary to hold it in place between the jaws during transfer. The amount of this secondary compression is only $\frac{3}{64}$ of an inch in the spread of the clip.

The only claim of the patent which the plaintiff relies upon to establish infringement is claim No. 3, which reads as follows: reference numerals being inserted for convenience of discussion in this opinion: "3. In a clip attaching machine, (1) means to feed a strip of metal into the machine, (2) means to shear the strip into clip-blanks, (3) means to press the blanks into the space between a pair of jaws and thereby fold the blank to V-shape, (4) means to carry the jaws and clip to position over the closed end of a container tube, (5) and means to force

the jaws together to secure the clip onto the end of the tube."

A reading of this claim discloses a combination made up of the five unitary elements indicated by the numeral references inserted therein above. Clauses 1 and 2 of the claim are so general in their statement that they give no inkling of the real invention which the patent was intended to protect. Yet clause 2 has a significance, which will appear more clearly later, in that it discloses that one process, at least, in the machine is the production of a "clip-blank."

Clause 3 contains the first reference to a definite part of the patented mechanism when it refers to "a pair of jaws" in which the "blanks" are pressed *and folded.*

Clause 4 refers to "the jaws," the language plainly indicating that the jaws here disclosed for the carriage of the clip are the very jaws previously mentioned in clause 3 for folding the blank. It may also be noticed that whereas clause 3 has to do with a "blank" which is folded in the jaws into V-shape, clause 4 is concerned with a "clip" which is carried by the jaws. Thus the inference is plain that the inventor considered that a "blank" once folded into V-shape, thereby becomes a "clip"—an inference, to be sure, not in the least at variance with the common parlance of the art. Thus the language indicates that the inventor contemplated the formation of the clip—that is to say, the transformation of a flat blank into a folded clip—in the very jaws that are utilized for carriage.

And in clause 5 another reference to "the jaws," this time as the means for clamping the "clip" upon the tube, discloses a third function for the very same pair of jaws.

And so, upon the plain language of the claim, it appears that the essence of the invention disclosed is in a clip-attaching machine a pair of jaws which (a) form the clip from a blank, (b) transfer the clip, *and* (c) clamp or close the clip.

That this is by no means a forced construction of the claim is further indicated by the specifications which, throughout, clearly disclose that each pair of jaws is specified to form, carry, and close the clips.

The defendant's machine avoids infringement of this claim, in that the jaws which it utilizes for carriage and closing of the clips are not employed to form the clip. Instead, the defendant's machine forms the clip in a die before its jaws come into play at all.

Consequently, when the jaws of the defendant's machine are in receiving position, a "clip," fully formed, is inserted, and not a flat "blank" as called for by clause 3 of the inventor's claim. Thus in this respect the claim will not read upon the defendant's machine.

The kernel of the invention being, as already stated, one pair of jaws which accomplishes three separate, successive steps in the complete operation of the machine, there is no room for the application of the doctrine of equivalents. The jaws of the defendant's machine, though they carry and close the clip, do not form it. Such being the fact, it matters nothing how, when or where the clip is formed in the defendant's machine. For if the defendant does not use the same jaws to form, as well as to carry and close the clips, it does not use the only inventive conception disclosed in the claim.

On trial and in brief the plaintiff has sought escape from the limitations of claim 3 by the contention that the minute compression of the clip upon its insertion into the jaws of the defendant's machine, as above described, was such a folding or forming of the clip that it should be held that the jaws of the defendant's machine in fact form, as well as carry and close the clip. This contention, at most a tenuous one, cannot be sustained for the following reasons:

It is true that the evidence shows that the spread of the clip when seated in the jaws, under compression, may in an extreme case be $\frac{3}{64}$ of an inch less (and the angle of fold correspondingly greater) than when previously folded in the die. But it is the fact that the only purpose of the slight compression or fold imparted to the clip upon its insertion in the jaws is to produce sufficient friction to hold it in place during transfer. The inventor, however, in his claim has not specified friction as an element in the means for the transfer of the clip. Indeed, counsel do not press such a construction of the claim upon the court, but urge rather a finding that the jaws in the defendant's machine do indeed perform a folding function. If so, it must be because they fold a *clip* already folded—not a *blank* as called for by clause 3 of the claim.

In any event, if the only purpose of this secondary compression is incidental to the means for carriage, every other purpose for folding a blank into V-shape necessarily is achieved by the defendant's machine at that earlier stage when the blank is forced into the die.

In fact, in both machines equally, the really material purpose in folding a flat blank into a clip is because a folded clip is necessary for the success of the clamping operation. If a straight and accurately centered fold is not imparted to the flat blank before the clamping means of the jaws come into play, successful operation becomes unattainable. This is an obvious conclusion from the mechanical facts. Were it other than obvious, it would follow by necessary inference from the specifications of the patent. For there the inventor states (page 2, line 8) that his "problem is to *form and attach* a V-shaped clip." Of course, if the machine were so designed that it could attach a flat blank as successfully as a V-shaped clip, the forming of such a clip could have no conceivable part in the inventor's problem.

The mind cannot escape from the conclusion that, for all purposes of this case, by the defendant's machine the blank is folded in the die—not the jaws. The invention covered by the patent has not been used in the defendant's machine. The charge of infringement has not been sustained.

Consequently there is no occasion to consider the validity of the patent.

The plaintiff's bill is dismissed, with costs.